UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

v.

ANGELO VAZQUEZ-RODRIGUEZ,

           Defendant.

_____

REPORT, RECOMMENDATION AND ORDER

12-CR-00346-WMS-JJM

        This case was referred to me on April 20, 2012 by Hon. William M. Skretny for supervision of all pretrial proceedings [25]. Before me is defendant's omnibus pretrial motion [35][1] and the government's cross-motion for disclosure of reciprocal discovery [31], pp. 18-19. Oral argument was held on March 28, 2013 [34]. For the following reasons, defendant's non-dispositive motions are denied and the government's cross-motions for reciprocal discovery is granted; and I further recommend that defendant's motion for a Franks hearing be denied.

**BACKGROUND**

        Defendant is charged in an Indictment [24] with conspiracy to possess cocaine with intent to distribute and distributing cocaine, in violation of 21 U.S.C. ¶846, and attempt to possess cocaine with intent to distribute, in violation of 21 U.S.C. ¶846, maintaining a drug-involved premises, in violation of 21 U.S.C. §856(a)(1), possession of a firearm in furtherance of drug trafficking crimes, in violation of 18 U.S.C. §924(c)(1), and possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. §§922(k) and 924(a)(1)(B).[2]

---

[1] At my direction, defendant's motion [30] was re-filed following oral argument to correct an incomplete exhibit [35].

[2] The Indictment [24] also contains a forfeiture allegation.

These charges arise from a law enforcement investigation that resulted in the discovery of approximately four and a half pounds of cocaine in an Express Mail Parcel destined for Angel's Barber Shop located at 391 Abbott Road in Buffalo, New York. Nastoff Affidavit [35-2], ¶11. On April 13, 2012, I signed an order permitting the installation of an electronic transmitting device inside this package and a search warrant permitting a search of Angel's Barber Shop [35-1]. The cocaine discovered in the package was replaced with "sham" cocaine prior to its delivery. Nastoff Affidavit [35-4], ¶15.

Two cellular telephones were seized as a result of the April 16, 2012 search of Angel's Barber Shop (Sprint HTC 4G and iPhone). Nastoff Affidavit [35-4], ¶21. The information contained on the Sprint HTC was downloaded and a portion inspected, before the search was ceased until search warrants [35-5][3] were obtained from me on May 24, 2012 for the two cellular telephones. Nastoff Affidavit [30-4], ¶¶24-25. Both search warrant applications were supported by the affidavits of Drug Enforcement Administration ("DEA") Special Agent ("SA") Shane A. Nastoff [35-2, 35-4].

Since I signed the search warrants at issue, at oral argument I provided the parties with an opportunity to have these issues decided by another Magistrate Judge, but they agreed that I should decide them.

---

[3] Defendant's motion only includes the search warrant issued for the Sprint HTC cellular telephone [35-5].

ANALYSIS

A.   Defendant's Motions

   1.   **Motion for a <u>Franks</u> hearing**[4]

"To secure a *Franks* hearing, a defendant must both (1) make a 'substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit' and (2) show that 'the allegedly false statement [was] necessary to the finding of probable cause'". <u>United States v. Morris</u>, 2013 WL 335980, *1 (2d Cir. 2013) (Summary Order) (*quoting* <u>Franks</u>, 438 U.S. at 155–56). "To determine if the false information was necessary to the issuing judge's probable cause determination, *i.e.*, material, a court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant . . . . If the corrected affidavit supports probable cause, the inaccuracies were not material to the probable cause determination and suppression is inappropriate." <u>United States v. Canfield</u>, 212 F.3d 713, 718 (2d Cir. 2000).

   **a. The April 13, 2012 Search Warrant for Angel's Barber Shop**

Defendant seeks a <u>Franks</u> hearing, arguing that the government agents replaced the cocaine discovered in the intercepted package with a non-narcotic substance "but did not disclose this to the court in the application for the search warrant for the barbershop" (Brown Affirmation [35], ¶30), and that "despite telling the court that it had no reason to suspect that cocaine was stored on the barbershop premises and that cocaine would only be there upon

---

[4]   <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).

delivery of the Express Mail Parcel, the government intended all along, not to deliver cocaine to the barbershop." Id.  In response, the government acknowledges that the "affidavit does not specifically state that the contents of the package would be replaced with 'sham' material prior to the controlled delivery", but argues that "[t]he presence of actual cocaine in the package . . . was ancillary to a probable cause finding, which was otherwise established by the factual assertions already in the warrant." Government's Response [31], pp. 23, 24.

Even if SA Nastoff misrepresented that the package would contain cocaine upon delivery, probable cause for the search warrant was not contingent upon introduction of cocaine into the premises by the delivery of the package. While defendant argues that SA Nastoff acknowledged in his supporting affidavit that he had "no specific information that cocaine is currently being stored at the target business" (Brown Affirmation [35], ¶18), he ignores the balance of SA Nastoff's statement: "While your affiant, *beyond the information set forth above*, has no specific information that Cocaine is currently being stored at the target business, *based on my training and experience . . . . I have learned . . . . [t]hat drug traffickers, such as dealers in significant quantities of Cocaine (as in this case), frequently maintain quantities of Cocaine at their business(es)*". Nastoff Affidavit [35-2], ¶¶15, 15(a) (emphasis added).

In establishing probable cause, SA Nastoff's Affidavit [35-2] stated that during an investigation "involving the trafficking of cocaine from Puerto Rico to various locations in the Buffalo/Lackawanna area", it was learned that defendant "was receiving shipments of cocaine at various addressed by U.S. Mail." Id., ¶6.  A review of postal records revealed that on November 23, 2011 a package was delivered to "Angel Velazquez, 391 Abbott Road, lower left, Buffalo, NY 14220", from "Luquillo, Puerto Rico" - the same city as the intercepted package.  Id.

SA Nastoff opined that, based on his training and experience, the approximately four and a half pounds of cocaine contained inside the package was "consistent with large-scale drug trafficking" (Nastoff Affidavit [35-2], ¶11), and that cocaine and other evidence of criminality would be discovered at Angel's Barber Shop. Id., ¶¶15, 15(a). "Courts recognize that experience and training may allow a law enforcement officer to discern probable cause from facts and circumstances where a layman might not." United States v. Gaskin, 364 F.3d 438, 457 (2d Cir. 2004), cert. denied, 544 U.S. 990 (2005).

SA Nastoff's acknowledgment that he had no specific information that cocaine was being stored at Angel's Barber Shop does not undermine the probable cause set forth in the balance of his Affidavit [35-2]. The probable cause standard "does not demand certainty but only a 'fair probability' that contraband or evidence of a crime will be found." Gaskin, 364 F.3d at 457. *See* United States v. Funderburk, 492 F.Supp.2d 223, 253 (W.D.N.Y. 2007) (Arcara, J./Foschio. M.J.) ("The absence of any specific information more conclusively suggesting that contraband or evidence of Mullen's narcotics trafficking was located at Mullen's . . . place of business or his vehicle . . . does not require suppression . . . . [The] Fourth Amendment's requirement of a fair probability that evidence of a crime exists . . . may be established based on experience and evaluation of facts by [a] trained police officer").

Defendant also argues that "there is a separate issue of whether or not the delivery to 'Miguel R' outside of the barbershop", as indicated in the Report of Investigation ([35-3], p. 6 of 15), was "in conformity with the search warrant." Brown Affirmation [35], ¶31. However, this "conduct is clearly beyond the scope of *Franks*, as said case is limited to the statements that are 'deliberately [false] or in reckless disregard for the truth,' that are the basis for the probable

cause to issue a search warrant, and not the afterward conduct in the execution of said warrant." United States v. Perez-Velazquez, 488 F.Supp.2d 82, 97 (D. Puerto Rico 2007). *See also* United States v. Peoples, 2012 WL 3993893, *3 (W.D.N.Y. 2012) (Scott, M.J.), reconsideration granted on other grounds, 2012 WL 3989940 (W.D.N.Y. 2012) ( "[t]he manner of the execution of a search warrant does not provide a basis to hold a *Franks* hearing to determine whether false or recklessly presented untruths were given in support of authorizing the warrant"). Therefore I recommend that defendant's motion for a Franks hearing concerning the search warrant for Angel's Barber Shop be denied.

### b. The May 24, 2012 Search Warrants for the Cellular Telephones

Defendant seeks a Franks hearing as to these warrants, arguing that "[a]ccording to the search warrant application, government attorneys were aware of the need for a search warrant in order to legally search the memory of the cellular telephones", but "it appears that the agent was either not properly instructed in this regard or disregarded those instructions." Brown Affirmation [35], ¶37. He also argues that "it is not clear what information contained in the cellular telephone memory was reviewed prior to the time when it is claimed the government stopped its review" and "that according to the search warrant application, the review had begun on April 16, 2012, yet the application for the search warrant was not signed until May 24, 2012, more than one month later." Id., ¶36. In response, the government treats defendant's motion as

seeking suppression, and relies upon the Leon[5] good-faith and inevitable discovery exceptions to the exclusionary rule. Government's Response [31], pp. 28-33.[6]

      Whether defendant's motion is treated as seeking a Franks hearing or suppression of the fruits of my May 24, 2012 search warrant as being tainted by the unauthorized search of the HTC Sprint cellular telephone,[7] I recommend that it be denied. If treated as a motion for a Franks hearing, defendant fails to point to a misrepresentation or omission (much less a material one) contained in SA Nastoff's May 24, 2012 search warrant application.[8] He fully disclosed to me in his supporting affidavit the fact that the Sprint HTC cellular telephone had been searched and that when he reported to Assistant United States Attorney John M. Alsup that he recovered a text message he believed was related to drug trafficking activities, he was advised that he should immediately stop viewing any information obtained from the phone, and that phone was secured at the DEA Office pending submission of the search warrant application. [35-4], ¶¶22-25.

---

    [5]    United States v. Leon, 468 U.S. 897 (1984)

    [6]    The Leon good faith exception does not apply to a successful Franks challenge. See Leon, 468 U.S. at 923 ("Suppression . . . remains an appropriate remedy if the . . . judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth").

    [7]    The record before me establishes that only the Sprint HTC cellular telephone was searched prior to the May 24, 2012 search warrant application. According to the government, no search of the iPhone occurred because it was password protected and that even after the issuance of my May 24, 2012 search warrant, the government needed to obtain a subsequent order to permit Apple to assist the government in by-passing the iPhone's security features in order to access its contents. Government's Response [31], p. 28 n. 4. Defendant does not challenge these representations in its reply, other than to question why it took more than one month to obtain the search warrant. Brown Reply Affirmation [33], ¶6. .

    [8]    As discussed above, defendant also cannot seek a Franks hearing concerning the execution of the search warrant for Angel's Barber Shop that led to the search of Sprint HTC cellular telephone. See Perez-Velazquez, 488 F.Supp.2d at 97

In any event, the only fact conveyed in SA Nastoff's Affidavit as to what he discovered from his search of the cellular telephone was his statement that he "observed a text message that involved, in sum and substance, a discussion of a debt regarding a large sum of money", which he believed "was related to the cocaine trafficking activities of [defendant]". Nastoff Affidavit [35-4], ¶24. Even removing this information from SA Nastoff's Affidavit, the balance of the affidavit establishes probable cause that the cellular telephones contained evidence of drug trafficking.

SA Nastoff's Affidavit in support of the search warrants stated that defendant admitted that the Sprint HTC cellular telephone belonged to him and during the execution of the search warrant the iPhone was discovered within defendant's reach and he asked to use the iPhone after it received an incoming call. Id. ¶21. Coupled with defendant's connection to the cellular telephones, SA Nastoff stated that a reliable confidential witness had arranged drug transactions with defendant by telephone, which was confirmed by his own training and experience. Id., ¶¶9 n.1, 26, 28. Therefore, I recommend that defendant's motion for a Franks hearing concerning the May 24, 2012 search warrants for the cellular telephones be denied.

If treated as a suppression motion, the unauthorized search of the Sprint HTC cellular telephone was not material to my probable cause determination in issuing the May 24, 2012 search warrants. "The mere inclusion of tainted evidence in an affidavit does not, by itself, taint the warrant or the evidence seized pursuant to the warrant . . . . Rather, a reviewing court should excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant." United States v. Reilly, 76 F.3d 1271, 1282 n.2 (2d Cir. 1996). Therefore, for the reasons discussed above, I

conclude that the findings conveyed to me from the unauthorized search of the Sprint HTC cellular telephone were not material to my issuance of the May 24, 2012 search warrants.

Moreover, even if this information had been material to my issuance of the May 24, 2012 search warrants, I would conclude that the Leon good faith exception to the exclusionary rule applies. Suppression is to be the "last resort, not [the court's] first impulse". Herring v. United States, 555 U.S. 135, 140 (2009). "Thus, in *United States v. Leon*, the Supreme Court recognized an exception to the exclusionary rule for 'evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant.'" United States v. Clark, 638 F.3d 89, 99 (2d Cir. 2011). The good-faith exception has also been applied to searches that exceed the scope of an otherwise valid warrant. *See, e.g.*, Massachusetts v. Sheppard, 468 U.S. 981, 988 (1984); United States v. American Investors of Pittsburgh, Inc., 879 F.2d 1087, 1107 (3d Cir.), cert. denied, 493 U.S. 955 (1989); United States v. Jefferson, 2010 WL 1186279, *5 (E.D.Wis. 2010) ("If it was objectively reasonable for the officer to believe that the warrant authorized him to search a particular area, even though it is later determined that the search exceeded the strict textual scope of the warrant, the evidence need not be suppressed").

"To show a deliberate disregard for the warrant's restrictions, it must be demonstrated that a reasonably well-trained officer would have known that the search was illegal, despite the magistrate's authorization. This is a question of objective reasonableness, rather than subjective good faith." American Investors of Pittsburgh, Inc., 879 F.2d at 1107 (*citing* Leon, 468 U.S. at 919, n. 20).

As set forth in SA Nastoff's Affidavit supporting the May 24, 2012 search warrant for the cellular telephones ([35-4], ¶¶22-23), my April 13, 2012 search warrant for Angel's Barber Shop provided the following description of its scope: **"See attached Schedule of Items to be Seized and Searched, attached hereto as Exhibit A, and incorporated herein by reference, all of which constitute fruits, evidence and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1), 844 and 846"** [35-1] (emphasis in original). However, Exhibit A to the search warrant, which provided a list of items, including cellular telephones, was captioned: "SCHEDULE OF ITEMS TO BE SEARCHED FOR AND SEIZED". Id.

Viewed in isolation, the face of the warrant appears to give authorization to search the items seized, whereas the attached Schedule clearly limits the agents to searching for the items to be seized. Since the search warrant lends itself to a reading that could be interpreted as authorizing a search of the cellular telephones, I conclude that SA Nastoff acted in objective good faith in searching the Sprint HTC cellular telephone.

Moreover, fault for this ambiguity, rests, at least in part, with me. Even though, as the government acknowledges (government's Response [31], p. 29), the better course would have been for SA Nastoff to seek guidance concerning the discrepancy before proceeding with his search, "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Leon, 468 U.S. at 916; United States v. Bonner, 808 F.2d 864, 867 (1st Cir. 1986), cert. denied, 481 U.S. 1006 (1987) ("The exclusionary rule should be limited to those situations where its remedial objectives are best served, *i.e.*, to deter illegal police conduct, not mistakes by judges and magistrates"). Thus, employing the exclusionary rule

would not serve the purpose of deterring police misconduct. Therefore, to the extent that the motion seeks suppression, I recommend that it be denied.

### 2. Motion for a Bill of Particulars

Defendant seeks particularization of the conspiracy count of the Indictment [24], arguing that it "is a generic regurgitation of the statute and little more", leaving him "unable to effectively prepare for trial and prevent[ing] him from knowing, in the future, if he is the subject of a successive prosecution." Brown Affirmation [35], ¶43. Consequently, he seeks particularization of the individuals with whom he is alleged to have conspired, what overt acts he is alleged to have committed, the date on which it is claimed he participated in the activities of the conspiracy, whether or not any of the other individuals present when he allegedly committed acts in furtherance of the conspiracy were acting for the government, the quantity of cocaine he is alleged to have possessed or distributed, and the identity of all individuals the government will claim were co-conspirators at trial, Id., ¶¶44(a)-(f). The government responds that defendant has not satisfied his burden of establishing need since this is alleged to be a short-term drug conspiracy and that he "has been provided with materials containing most all of the discovery in this matter", as well as the affidavit in support of the Criminal Complaint, which provides information concerning the government's case. Government's Response [31], p. 8.

A defendant may obtain a bill of particulars only if the requested information is necessary "(i) to enable him to prepare his defense; (ii) to avoid unfair surprise at trial; and (iii) to preclude a second prosecution for the same offense." United States v. Persico, 621 F.Supp. 842,

868 (S.D.N.Y. 1985).[9] "In deciding a motion for a bill of particulars, '[t]he important question is whether the information sought is necessary, not whether it is helpful.'" United States v. Conley, 2002 WL 252766, *4 (S.D.N.Y. 2002). A bill of particulars "should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense". United States v. Henry, 861 F.Supp. 1190, 1197 (S.D.N.Y. 1994).

It is defendant's burden to "make a 'particularized showing of need' for the information." United States v. Gonzalez, 1994 WL 689065, *2 (S.D.N.Y. 1994). The court "has the discretion to deny a bill of particulars if the information sought by defendant is provided in the indictment or in some acceptable alternate form." United States v. Barnes, 158 F.3d 662, 665 (2d Cir. 1998). See United States v. Messina, 2012 WL 463973, *10 (E.D.N.Y. 2012) ("In determining whether a defendant has shown such necessity, the trial court 'must examine the totality of the information available to the defendant, including the indictment and general

---

[9] Although it is not necessary for me to resolve this issue in deciding this motion, I acknowledge the government's argument that "[t]he 'double jeopardy' justification for awarding particularization appears to have limited vitality" Government's Response [31], pp. 3-4 n.1 (*citing* United States v. Payden, 613 F.Supp. 800, 808 n.2 (S.D.N.Y. 1985) ("'An indictment need not plead offenses in such detail as to be self-sufficient as a bar against further prosecution for the same offense; it is the judgment that constitutes the bar'"); United States v. Shoher, 555 F.Supp. 346, 351 (S.D.N.Y. 1983) ("defendant's concern is . . . unwarranted, given the well-established rule that the entire record of a proceeding, not simply the indictment, may be referred to if a subsequent prosecution is alleged to constitute double jeopardy").

pre-trial discovery'"). "Whether to grant a bill of particulars rests within the sound discretion of the district court." United States v. Panza, 750 F.2d 1141, 1148 (2d Cir. 1984).

"[T]here is a special concern for particularization in conspiracy cases." United States v. Palmer, 2012 WL 2953659, *3 (W.D.N.Y. 2012) (Scott, M.J.) (*citing* United States v. Davidoff, 845 F.2d 1151 (2d Cir. 1988)). Thus, "a bill of particulars or other adequate disclosure is appropriate where a conspiracy count covers a complex series of events over a number of years, but provides only the bare bones of the charge". Barnes, 158 F.3d at 666.

Count 1 of the indictment [24] alleges that "[b]etween in or about January 2011 . . . and on or about April 13, 2012, in the Western District of New York, and elsewhere, the defendant, did knowingly, willfully and unlawfully combine, conspire and agree with others, known and unknown, to . . . possess with the intent to distribute, and to distribute . . . cocaine". Although the indictment provides only the "bare bones" of the alleged conspiracy, it is not alleged to be a complex conspiracy and, at most, covered a 15-month period. Additionally, the affidavits submitted in support of the Criminal Complaint [1] and search warrants in this case, provide details as to the government's investigation.

Although the particularization sought may be helpful, "[a]s a general rule, the defendant does not 'need' detailed evidence about the conspiracy in order to prepare for trial properly." United States v. Feola, 651 F.Supp. 1068, 1132 (S.D.N.Y. 1987), aff'd, 875 F.2d 857 (2d Cir.), cert. denied, 493 U.S. 834 (1989); *see* United States v. Mullen, 243 F.R.D. 54, 62 (W.D.N.Y. 2006) (Foschio, M.J.) ("[A]s the government can prove the existence of a conspiracy through circumstantial evidence, a Bill of Particulars comprised of very specific details is not required for a drug trafficking conspiracy charge"); United States v. Chen, 2007 WL 2244213,

\*10 (S.D.N.Y. 2007) ("The Second Circuit . . . ha[s] routinely denied requests for Bills of Particulars concerning the 'wheres, whens, and with whoms' of the crime charged"). Therefore, this motion is denied.

### 3. Motion for Disclosure of Informant Identities

Defendant argues that disclosure concerning the informants used in this case "is essential to a fair determination of the charges" against him. Brown Affirmation [35], ¶48. The government opposes this request, arguing that defendant "cannot meet the threshold burden of proving that disclosure is 'material' to his defense, or that the safety of any informants could be reasonably assured if the identity of such informants is disclosed". Government's Response [31], p. 15.

Disclosure of a confidential informant's identity is an "extraordinary remedy". United States v. Muyet, 945 F.Supp. 586, 602 (S.D.N.Y. 1996). Defendant bears the burden of making "a *specific* showing that disclosure was both material to the preparation of the defense and reasonable in light of the circumstances surrounding the case". United States v. Bejasa, 904 F.2d 137, 139–140 (2d Cir.), cert. denied, 498 U.S. 921 (1990) (emphasis in original). "Speculation that disclosure of the informant's identity will be of assistance is not sufficient to meet the defendant's burden; instead, the district court must be satisfied, after balancing the competing interests of the government and the defense, that the defendant's need for disclosure outweighs the government's interest in shielding the informant's identity." United States v. Fields, 113 F.3d 313, 324 (2d Cir.), cert. denied, 522 U.S. 976 (1997); *see* Roviaro v. United States, 353 U.S. 53, 59 (1957); United States v. Jackson, 345 F.3d 59, 69 (2d Cir. 2003), cert.

denied, 541 U.S. 956 (2004). "Especially in narcotics cases, where the dangers of witness intimidation, subornation of perjury or actual injury to witnesses are great . . . the defendant's request for a witness list should not be granted absent a particularized showing of need." United States v. Taylor, 707 F.Supp. 696, 703 (S.D.N.Y. 1989).

Here, defendant's generalized claims of need to not meet the required showing necessary for this relief. Moreover, the firearm related allegations of the indictment highlight the government's interest in protecting the informant's safety. Therefore, this motion is denied.

4. **Motion for Disclosure of Brady/Giglio Material**[10]

The government responds that it is "fully aware of its obligations and responsibilities under Brady and acknowledges its continuing duty under Brady to produce such material, if and when it becomes aware of it." Government's Response [31], p. 10.[11] It also agrees to produced all "impeachment Brady material" in accordance with the schedule set by the District Court prior to trial and no later than when the government produces and delivers the Jencks Act material in this case." Id., pp. 12-13.

Relying on United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998), defendant appears to seek immediate disclosure of all Brady material to aid in his determination as to whether to plead guilty. Brown Affirmation [35], ¶¶56-57. However, Avellino does not "imply anything other than the well-established principle that *Brady* disclosures must be made in

---

[10] Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. United States, 405 U.S. 150 (1972).

[11] While defendant requests that I admonish the prosecution that its duty under Brady/Giglio is a continuing one (Brown Affirmation [35], ¶59), this is unnecessary since the government has acknowledged this obligation.

-15-

sufficient time for their effective use." United States v. Coppa, 267 F.3d 132, 144 n. 9 (2d Cir. 2001). See United States v. Ruiz, 536 U.S. 622, 633 (2002) ("the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant"); United States v. Mathur, 624 F.3d 498, 507 (1st Cir. 2010) ("It is . . . universally acknowledged that the right memorialized in *Brady* is a trial right").

Therefore, based on the government's representations, this motion is denied

### 5. Motion for Fed. R. Evid. 404(b), 608 and 609 Evidence

Defendant moves for disclosure of Fed. R. Evid. 404(b) 608 and 609 evidence. Brown Affirmation [35], ¶¶64-67. The government responds that it "will provide notice of such information to the defense pursuant to the District Court's trial Scheduling Order". Government's Response [31], p. 14. Based on the government's representation, defendant's motion is denied. See United States v. Ali, 2013 WL 707303, *4 (W.D.N.Y. 2013) (Scott, M.J.).

### 6. Motion for Early Disclosure of Jencks Act Material

Although defendant admits that "a district court may not ordinarily compel disclosure of *Jencks* material prior to the conclusion of a witness' direct examination" (Brown Affirmation [35], ¶74), he seeks pretrial production of these statements "for purposes of judicial economy, to expedite discovery and the trial of this case, and to avoid potential problems on the issue of whether all material has been tendered pursuant to *Brady*". Id. The government responds that it "will fully comply with the pretrial order of the District Court concerning the disclosure of witness statements specified in [18 U.S.C. §3500]", but reserves the right to argue

to the District Court that "a legitimate concern for the safety of the witness outweighs any need for pretrial disclosure of such statements." Government's Response [31], p. 14. Based on the government's representations, defendant's motion is denied.

### 7. Motion Preservation of Rough Notes

The government acknowledges its obligations in this regard and has no objection to defendant's request. Government's Response [31], p. 17. Based on the government's representations, this motion is denied.

### 8. Motion for Further Relief

Defendant reserves his right to make future motions. Brown Affirmation [35], ¶¶80-81. This motion is denied, without prejudice to the possibility of additional motions in the future, upon a showing of good cause for why they were not timely asserted. *See* Rule 12(e).

### B. Government's Cross–Motion for Reciprocal Discovery

The government moves for reciprocal discovery pursuant to Fed. R. Civ. P. ("Rule") 16(b). Government's Response [31], pp. 18-19. Defendant has not opposed this request. Therefore, the government's motion is granted. "Defendant shall provide such discovery, if any, not later than 30 days prior to trial or such other date as the District Judge may direct." United States v. Sikut, 488 F.Supp.2d 291, 304–5 (W.D.N.Y. 2007) (Foschio, M.J./Arcara, J.) (emphasis omitted).

**CONCLUSION**

For these reasons defendant's non-dispositive pretrial motions are denied and the government's cross-motion for reciprocal discovery is granted; and I further recommend that defendant's motion for a Franks hearing be denied. Unless otherwise ordered by Judge Skretny, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by May 2, 2013 (applying the time frames set forth in Rules 45(a)(1)(C), 45(c), and 59(b)(2)). Any requests for extension of this deadline must be made to Judge Skretny. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(b)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated: April 15, 2013

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge